ALD-129                                                        **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 25-2886
_____

EMMANUEL TYREE HOLLIDAY,
Appellant

v.

CENTURION MEDICAL /D.O.C. Company;
KOLAWOLE AKIN BYO, The Warden of this Jail;
CHRISTIN CLAUDIO, Health Services Admin/Medical
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. Civil Action No. 1:21-cv-01310)
District Judge:  Honorable Colm F. Connolly
_____

Submitted for Possible Dismissal Due to a Jurisdictional Defect,
Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B), or
Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
May 7, 2026
Before: SHWARTZ, FREEMAN, and CHUNG, *Circuit Judges*

(Opinion filed May 20, 2026 )
_____

OPINION[*]
_____

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Emmanuel Holliday, a former Delaware state pretrial detainee proceeding pro se and in forma pauperis, appeals from District Court orders dismissing his claims against two defendants, granting summary judgment in favor of the two remaining defendants, and denying his motion to appoint counsel. For the following reasons, we will summarily affirm.

I.

Holliday filed a complaint pursuant to 42 U.S.C. § 1983 against several defendants: (1) Christine Claudio, a Health Services Administrator; (2) Christine Onofrio, a Consult Coordinator; (3) Centurion Medical/D.O.C. Company ("Centurion Medical"); and (4) Warden Kolawole Akinbyo ("Warden Akinbyo"). Holliday alleged that the defendants violated his constitutional rights while he was in Delaware state prison as a pretrial detainee. Specifically, Holliday claimed that the defendants were deliberately indifferent to his shoulder pain because they did not order an MRI or schedule medical consultations with orthopedic surgeons in a timely manner.

The District Court sua sponte dismissed without prejudice Holliday's claims against Centurion Medical and Warden Akinbyo. Claudio and Onofrio then moved for summary judgment, arguing that there is no genuine issue of material fact as to whether they intentionally acted with deliberate indifference to Holliday's medical needs or otherwise violated his constitutional rights. The District Court granted that motion. Holliday appealed.

II.

We have jurisdiction pursuant to 28 U.S.C. § 1291. *See* Fed. R. App. P. 3(c)(4) ("The notice of appeal encompasses all orders that, for purposes of appeal, merge into the designated judgment or appealable order."). We exercise de novo review over the District Court's order sua sponte dismissing Centurion Medical and Warden Akinbyo for failure to state a claim. *See Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000). We also exercise plenary review over the District Court's summary judgment decision in favor of the defendants. *See Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if the evidence is sufficient for a reasonable factfinder to return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). We may summarily affirm on any basis supported by the record if the appeal fails to present a substantial question. *See Murray v. Bledsoe*, 650 F.3d 246, 247 (3d Cir. 2011) (per curiam); *see* 3d Cir. L.A.R. 27.4.

III.

The District Court properly dismissed Holliday's claims against Centurion Medical and Warden Akinbyo for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)(ii). While pro se pleadings should be liberally construed and held to less stringent standards than those prepared by attorneys, *see Estelle v. Gamble*, 429 U.S. 97, 106 (1976), pro se litigants "still must allege sufficient facts in their complaints to support a claim," *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir.

3

2013). Even liberally construed, Holliday's complaint failed to assert "that there was a relevant [Centurion Medical] policy or custom, and that the policy caused the constitutional violation . . . allege[d]." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (citing *Bd. of the Cnty. Comm'rs. of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 404 (1997)). Similarly, Holliday's complaint against Warden Akinbyo did not make out a plausible claim. Non-medical prison employees like Warden Akinbyo cannot be held liable for deliberate indifference "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." *See Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004). Holliday alleged he complained to Warden Akinbyo once about his shoulder pain, but prison administrators cannot be deliberately indifferent "simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." *See Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993) (holding that the warden of a state correctional facility and State Commissioner for Corrections could not be considered deliberately indifferent merely because they did not respond to multiple letters from the prisoner).

Furthermore, the District Court properly granted Onofrio and Claudio's summary judgment motion. Holliday argued that the delay in providing him with medical care and scheduling outside medical consultations with two orthopedic surgeons constituted deliberate indifference to a serious medical need. Onofrio and Claudio did not dispute that Holliday's shoulder pain constituted a serious medical need. They argued, however, that they were not deliberately indifferent.

4

Onofrio, the Consult Coordinator, was responsible for scheduling medical appointments for inmates at the direction of prison medical providers who submitted consultation requests. In Holliday's case, Onofrio was required to search for in-network orthopedic specialists during the COVID-19 pandemic, when providers were reluctant to accept non-emergent cases. Onofrio's role was "mostly administrative," although she also "provide[d] very limited clinical care, such as heart monitoring." As the Health Services Administrator, Claudio's "solely administrative" role included overseeing the Consult Coordinator; she did not "provide any clinical care or otherwise treat the incarcerated persons."

On February 22, 2021, Onofrio and Claudio received a prison medical provider's request for an MRI of Holliday's shoulder. That request was not marked "emergent," and Onofrio scheduled the test for March 23, 2021. The MRI results prompted a medical provider to submit a consultation request on March 24, 2021, for Holliday to see an orthopedic surgeon. Onofrio arranged for Holliday to meet with that orthopedic surgeon on April 23, 2021. That surgeon recommended that Holliday be examined by a more qualified surgeon who specialized in trauma-related orthopedic surgery. Consequently, on April 26, 2021, a medical provider submitted a consultation request for Holliday to see an orthopedic trauma surgeon. That same day, Onofrio began searching state-wide for an orthopedic trauma surgeon who would accept Holliday as a patient.

During the six months following the consultation request, Onofrio "followed up weekly with various practitioners, contacts, and open sources" for an orthopedic trauma surgeon who would accept Holliday's case. On October 26, 2021, Onofrio located an

out-of-state orthopedic trauma surgeon, Dr. James Krieg, who was willing to meet with Holliday for a consultation on November 16, 2021. At that appointment, Dr. Krieg examined Holliday but "declined to participate further in [Holliday's] care," advising that Holliday needed a shoulder specialist and that "Dr. Krieg could do nothing for [Holliday]." On December 17, 2021, the prison medical director approved a request for Holliday to be seen by a shoulder specialist. Onofrio began a search, but Holliday was released on January 26, 2022, before a specialist could be located.

Even assuming Onofrio and Claudio were medical officials responsible for his care, Holliday failed to present any evidence, other than his own allegations, from which a reasonable factfinder could determine that they intentionally delayed providing him with medical treatment for his left shoulder pain. Additionally, there is no evidence that Onofrio or Claudio had any reason to believe or actual knowledge that any of the doctors Holliday saw were mistreating him. *See Spruill*, 372 F.3d at 236. Holliday's speculative allegations are insufficient to allow his deliberate indifference claims to survive summary judgment. *See Halsey v. Pfeiffer*, 750 F.3d 273, 287 (3d Cir. 2014) ("[A]n inference based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat summary judgment." (quoting *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n.12 (3d Cir. 1990))). Viewing the evidence in the light most favorable to Holliday, as we must, he has failed to show a genuine issue of material fact that would

6

enable his deliberate indifference claims to survive summary judgment. Accordingly, the District Court properly granted Onofrio and Claudio's summary judgment motion.[1]

IV.

For the foregoing reasons, we conclude this appeal does not present a substantial question. Accordingly, we will summarily affirm the District Court's judgment.

---

[1] To the extent that Holliday challenges the denial of his motion for appointment of counsel, the District Court did not abuse its discretion in denying his request. *Tabron v. Grace*, 6 F.3d 147, 155 n.4 (3d Cir. 1993).